# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **PAMELA PARKER O/B.O A.L.P.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 4:11-CV-2826-VEH |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OF OPINION

Plaintiff Pamela Parker (hereinafter "Ms. Parker"), on behalf of her minor son A.L.P., brings this action pursuant to Title XVI of the Social Security Act ("the Act"). She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied her son's application for Supplemental Security Income ("SSI"). Ms. Parker timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g) of the Act.[1]

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI under the Act. However, separate, parallel

## FACTUAL AND PROCEDURAL HISTORY

A.L.P. was a 10-year-old male and had completed the third grade at the time of the 2008 hearing before the administrative law judge ("ALJ"). (R. at 41.) Ms. Parker claims that her son became disabled in March 2008, due to mild mental retardation, pervasive developmental disorder, and depressive disorder. (R. at 30.)

Ms. Parker filed an application for SSI on behalf of A.L.P. on March 30, 2006, alleging an onset date of September 1, 2005. (R. at 54, 71–73, 91.) The Commissioner initially denied this claim on July 13, 2007. (R. at 14.) Ms. Parker filed a timely written request for a hearing before an ALJ, which was held on June 5, 2008. (R. at 25.) The ALJ again denied A.L.P.'s claim on September 24, 2008. (R. at 23.) Ms. Parker timely sought review with the Appeals Council. (R. at 24.) The Appeals Council declined to review the ALJ's decision. (R. at 1.) Thus, the Commissioner's decision became final on December 3, 2009. (*Id.*)

Ms. Parker brought this suit on November 21, 2011. (Doc. 1.) This court has carefully considered the record and affirms the decision of the Commissioner.

## STANDARD OF REVIEW

---

statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion that may relate to DIB claims should be considered to refer to the appropriate parallel SSI related authority. The same applies to citations of statutes or regulations found in quoted court decisions.

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *See Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for SSI and establish an entitlement for a period of disability, a child must be disabled as defined by the Act and the Regulations promulgated thereunder.[2]  The law defines children's "disability" as "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906.

In determining whether a child is disabled, the Regulations provide a three-step process.  20 C.F.R. § 416.924.  The Commissioner must determine in sequence:

(1) whether the child is engaged in "substantial gainful activity;"[3]
(2) whether the child has a "medically determinable impairment" that is "severe" in that it causes "more than minimal functional limitations;"[4] and
(3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in the

---

[2]  The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through September 20, 2012.

[3]  *Id.* at § 416.924(a).

[4]  *Id.* at § 416.924(c).

appendix to the regulations (the "Listings of Impairments").[5] *See Henry v. Barnhart*, 156 F. App'x 171, 173 (11th Cir. 2005) (unpublished) (citing 20 C.F.R. § 416.924(a)); *accord Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999).

A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908. It "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not merely by a claimant's statement of symptoms." *Id.*

The Commissioner will find that a medically determinable impairment (or combination of impairments) meets a listed impairment if it "satisfies all the criteria of the listing." 20 C.F.R. § 416.925. The Commissioner will find that a medically determinable impairment medically equals a listed impairment using the procedures described in 20 C.F.R. § 416.926.

The Commissioner will find a medically determinable impairment (or combination of impairments) functionally equals a listed impairment if a child's

---

[5] *Id.* at § 416.924(d); 20 C.F.R. pt. 404, Subpart P, app.1 (listing and describing impairments).

impairment "results in 'marked'[6] limitations in two domains of functioning or an 'extreme'[7] limitation in one domain." 20 C.F.R. § 416.926a(a). The Regulations establish six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i-iv). The Regulations recognize that an impairment or combination of impairments may have an effect in more than one domain; thus, the Commissioner evaluates a child's impairment in any domain in which it causes limitations. 20 C.F.R. § 416.926a(c).

If an impairment (or combination of impairments) does not meet the duration requirements, or does not meet, medically equal, or functionally equal one of the listings in the regulations, the Commissioner will find that the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2).

### FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

At Step One, the ALJ found that A.L.P. has not engaged in any substantial

---

[6] A "marked" limitation in a domain of functioning is found when a child's impairment seriously interferes with his ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).

[7] An "extreme" limitation in a domain of functioning is found when a child's impairment very seriously interferes with his ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

gainful activity. (R. at 17.) At Step Two, the ALJ found that A.L.P. has one severe impairment—mild mental retardation. (*Id.*) The ALJ noted that A.L.P. was diagnosed with and received treatment for pervasive developmental disorder and depressive disorder in 2008. (*Id.*) However, the ALJ did not find that these impairments are severe.

    At Step Three, the ALJ found that A.L.P.'s impairments do not meet or medically equal Listing 112.05D. (*Id.*) The ALJ assumed that A.L.P.'s IQ test score of 65 is valid. However, the ALJ found "no evidence of another physical or mental impairment that imposes an additional and significant limitation of function." (R. at 18.) The ALJ declined to consider A.L.P.'s pervasive developmental disorder or depressive disorder because there was no evidence these conditions met the twelve (12) month duration requirement. (*Id.*)

    The ALJ then found that A.L.P.'s impairments do not functionally equal a listed impairment. Ms. Parker does not allege functional limitations in three domains (Moving about and Manipulating Objects, Caring for Yourself, and Health and Physical Well-being). The ALJ found that A.L.P. has a "less than marked limitation" in the Acquiring and Using Information domain and the Attending and Completing Tasks domain. (R. at 19–20.) The ALJ then found that A.L.P. has "no limitation" in the Interacting and Relating to Others domain. (R. at

21.) Because A.L.P. showed only "less than marked" limitations in two of the six functional domains, the ALJ found that his impairments do not functionally equal a listed impairment. The ALJ found, therefore, that A.L.P. is not disabled under the Act. (R. at 23.)

## ANALYSIS

The court can reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[8]

Ms. Parker makes three arguments in this appeal: (1) the ALJ erred in concluding that A.L.P. does not meet Listing 112.05D; (2) the ALJ improperly substituted his opinion for that of a medical expert; and (3) the ALJ improperly disregarded or ignored record evidence which is contrary to his decision. Because the ALJ applied the correct legal standards and because his decision is supported by substantial evidence, these argument fail.

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

### A.   The ALJ's Did Not Err in Finding that A.L.P. Does Not Meet Listing 112.05D.

To meet a listing, a claimant must satisfy each criteria of the listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (citation omitted). The claimant bears the burden of showing that his impairment (or combination of impairments) meets a listed impairment. *See Wilkinson ex rel. Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

> Listing 112.05D "Mental Retardation" requires that a claimant:
>
> (1)   has "significantly subaverage general intellectual functioning with deficits in adaptive functioning;"
> (2)   has a "valid, performance, or full scale IQ of 60 through 70;" and
> (3)   has "a physical or other mental impairment imposing an additional and significant limitation of function."

20 C.F.R. pt. 404, Subpart P, App. 1 (hereinafter "Listing 112.05D"). The third element is the only one at issue here. (*See* R. at 18.)

The ALJ found that A.L.P. does not have "a physical or other mental impairment which impos[es] an additional and significant limitation of function." Listing 112.05D. Substantial record evidence supports this conclusion. The ALJ

9

noted that A.L.P.'s medical records from Gadsden Pediatrics—which encompass the years 2002 to 2008—made "no mention of any mental health complaints." (R. at 18, 109–120, 136–150.)  In fact these records frequently noted that A.L.P. was well-appearing, well-developed, and cooperative.  (R. at 113, 114, 116, 118, 119, 136, 139, 144, 146.)  No objective record evidence indicates that A.L.P. had any serious disciplinary problems while in school.  (R. at 17, 21, 155.)  And, the record shows that A.L.P has never been tested for behavioral problems.  (R. at 94.)

In May 2008, the C.E.D. Mental Health Center diagnosed A.L.P. with pervasive developmental disorder and depressive disorder NOS.  (R. at 161.)  Ms. Parker contends the ALJ overlooked these conditions.  Contrary to Ms. Parker's contention, the ALJ was clearly aware of them.  (R. at 18) (noting the treating records from the C.E.D. Mental Health Center).  The ALJ found that these conditions are not severe impairments.  (R. at 17.)   Alternatively, the ALJ found that these conditions do not satisfy the one year duration requirement.  *See* 20 C.F.R. § 416.909; R. at 18.

The record supports these conclusions.  First, the record contains no evidence that these impairments lasted or could be expected to last for longer than twelve (12) months.  The treatment records from C.E.D. Mental Health Center are only for a three month period (April through June of 2008).  (R. at 153–64.)  And,

these records are silent as to how long these conditions might last.  Ms. Parker contends the ALJ should have recontacted A.L.P.'s physicians to find out if his pervasive development disorder and depressive disorder would last more than twelve (12)  months.  This argument fails.  The Regulations require an ALJ to contact a medical source only when the records contain a conflict or ambiguity. *See* Social Security Ruling 96-5p,  1996 WL 374183, at *2.  Here, the treatment records are not ambiguous, simply silent.

Furthermore, even if the ALJ erred in finding that these conditions do not satisfy the twelve (12) month duration requirement, this error was harmless as the record contains little to no evidence showing that these conditions imposed "an additional and significant limitation of function." *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (dismissing an ALJ's error as harmless).  A.L.P.'s treatment records show his doctor prescribed Geodon for his pervasive developmental disorder and depressive disorder. (R. at 161.)  Shortly thereafter, A.L.P. apparently ceased treatment.  This cessation in treatment suggests either that A.L.P's pervasive developmental disorder and depressive disorder were well-controlled by medication or that these conditions did not significantly limit A.L.P.'s functioning.

Ms. Parker contends that treatment notes from the C.E.D. Mental Health

Center show that A.L.P.'s pervasive developmental disorder and depressive disorder significantly limited his functioning. For instance, she contends the notes show A.L.P. frequently fought while in public school, has difficulty understanding simple instructions, makes noises throughout the day for no reason, has nightmares four times a week, beat his mother's cat to death, has difficulty making friends, and has experienced auditory hallucinations. (*See* R. at 156.) Upon closer inspection, these notes represent only Ms. Parker's statements to A.L.P.'s doctor. (*See* R. at 156) ("Mom states consumer seems to have a problem . . . ."). Thus, these statements are not a medical opinion, nor are they objectively verified by the record. The ALJ specifically discounted as uncorroborated Ms. Parker's contention that A.L.P. fought frequently while in school. (R. at 21.) Additionally, the objective evidence in the record shows that A.L.P. was cooperative, appeared well developed, and presented to his doctors with a normal mood. (R. at 113, 114, 116, 118, 119, 123 136, 139, 144, 146, 162, 164.)

      Ms. Parker bears the burden of showing that A.L.P. meets all the criteria of a listed impairment. Given the objective record evidence and the lack of evidence in the record showing that A.L.P.'s pervasive developmental disorder and depressive disorder impose "additional and significant limitations of function," the court cannot conclude the Commissioner erred in finding that A.L.P does not

meet Listing 112.05D.

## B. The ALJ Did Not Substitute His Opinion for that of a Treating Medical Expert

The ALJ found that A.L.P. has "less than marked" limitation in two functional domains (the Acquiring and Using Information and the Attending and Completing Tasks domains) and "no limitation" in one functional domain (the Relating to Others domain).[9] Ms. Parker contends these findings show the ALJ substituted his opinion for the opinions of A.L.P.'s treating physicians. Pl.'s Br. at 9. Again, she points to her statements in A.L.P.'s treatment notes from the C.E.D. Mental Health Center. (R. at 156.) As noted above, Ms. Parker's statements are not a medical opinion. Moreover, Ms. Parker has not identified the specific medical professional for whom the ALJ substituted his opinion. Pl.'s Br. at 9. And, no medical professional, at least not one whose opinion the court can find in the record, ever concluded that A.L.P. has a "marked" or "extreme" limitation in any functional domain. (R. at 153–64.) Therefore, the ALJ did not substitute his opinion for that of a medical expert.

Additionally, the ALJ's decision regarding A.L.P.'s functional domains is

---

[9] A.L.P. does not allege a limitation in any of the other three functional domains (the Moving and Manipulating Objects domain, the Caring for Yourself domain, and the Health and Physical Well-Being domain). Moreover, the ALJ expressly found the evidence does not suggest a limitation in any of these domains. (R. at 21–23.)

supported by substantial evidence.  A "marked" limitation is one which "interferes <u>seriously</u> with [a claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i) (emphasis added).  An "extreme" limitation is one which interferes <u>very seriously</u> with [a claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

    Regarding A.L.P.'s ability to Acquire and Use Information, the ALJ found that he received A's, B's, and C's in first grade while in regular classes and noted that he was not pulled from public school for academic reasons.  (R. at 17, 19, 122.)  In the Attending and Completing Tasks domain, the ALJ found A.L.P. had not been diagnosed with attention deficit disorder nor were there any observations of hyperactivity or inattention.  (R. at 20.)  Still, the ALJ "erred on the side of caution" and found A.L.P. had a less than marked limitation based on his IQ scores and academic record.  (*Id.*)

    Finally, regarding A.L.P.'s ability to Interact and Relate to Others, the ALJ found no limitation.  The ALJ based his conclusion on the lack of corroborating evidence that A.L.P. fought frequently in school.  Other evidence in the record also supports the ALJ's finding.  Dr. June Nichols reported that A.L.P. told her he has several friends he enjoys spending time with.  (R. at 123.)   And, an agency

consultant, Dr. Frank Nuckols, who reviewed A.L.P.'s medical records in 2006, opined that A.L.P. has no limitation in the Interacting and Relating to Others domain of functioning. (R. at 128.)

However, the court is aware that other evidence in the record suggests that A.L.P.'s ability to Interact and Relate to Others is somewhat impaired. For instance, Dr. June Nichols, Psy. D., reported that A.L.P. "will likely have difficulty relating to peers and authority figures alike due to his intellectual deficits." (R. at 124.)   Additionally, the court notes that Dr. Nuckols's report is dated almost two years before A.L.P. was admitted to the C.E.D. Mental Health Center. Nonetheless, the court finds that, even if the ALJ erred in deciding that A.L.P. has no limitation in this functional domain, the error was harmless. The record does not support a finding that A.L.P. has an extreme limitation in this domain. *See* 20 C.F.R. § 416.926a(e)(3)(i) ("'Extreme' limitation is the rating we give to the worst limitations."). And, even if A.L.P.'s limitation in this domain is "marked," he would still not be disabled under the Regulations. *See* 20 C.F.R. § 416.926a(a) (requiring a "marked" limitation in at least two functional domains to find a child disabled).

    **C.**    **The ALJ Did Not Err by Ignoring Contrary Record Evidence**

Ms. Parker argues that an ALJ's decision "is not based on substantial

evidence which focuses on one aspect of the evidence while ignoring other contrary evidence." Pl's Br. at 11 (citing *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986)). While this argument correctly states the law, Ms. Parker does not identify the specific record evidence the ALJ allegedly ignored. As noted above, Ms. Parker contends the A.L.J. overlooked treatment notes from the C.E.D. Mental Health Center. But, as explained above, the ALJ did not disregard or ignore these treatment notes. (R. at 20.) Additionally, the court has thoroughly reviewed the record and found no evidence which "establish[es] a disabling impairment." Pl.'s Br. at 11. Therefore, the court finds the ALJ did not err by ignoring significant and contrary record evidence.

## CONCLUSION

For the forgoing reasons, the decision of the Commissioner is due to be **AFFIRMED.**

**DONE** and **ORDERED** this the 28th day of September, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge